**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**LUBBOCK DIVISION**

| | | |
|---|---|---|
| SCHYLER Z. GRODMAN, M.D., | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Civil Action No. 5:23-cv-00210-H |
| | § | |
| | § | |
| TEXAS TECH UNIVERSITY | § | |
| HEALTH SCIENCES CENTER | § | |
| Defendant | § | |

---

**DEFENDANT'S PARTIAL MOTION TO DISMISS PLAINTIFF'S**
**FIRST AMENDED COMPLAINT**

---

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy Attorney General for Litigation

JAMES LLOYD
Deputy Attorney General for Civil Litigation

KIMBERLY GDULA
Chief, General Litigation Division

JOSEPH D. KEENEY
Attorney-In-Charge
Texas Bar No. 24092616
Assistant Attorney General
Office of the Attorney General
General Litigation Division -019
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Telephone: (512) 475-4090
Facsimile: (512) 320-0667
Joseph.Keeney@oag.texas.gov

***ATTORNEYS FOR DEFENDANTS***

TABLE OF CONTENTS

Table of Contents ................................................................................................................. i

Table of Authorities ............................................................................................................ ii

I. Background .......................................................................................................................1

II. Issues in Dispute and Standard of Review ....................................................................2

III. Argument .......................................................................................................................3

    A. Plaintiff's First Amended Complaint fails to state a due process claim ...............................3

        1. TTUHSC has sovereign immunity from claims brough under Section 1983 ...................3

        2. Plaintiff's Section 1983 claim fails to state a claim upon which relief can be granted ......3

            i. Section 1983 does not permit claims against state institutions .......................................4

            ii. Plaintiff has not alleged a violation of his procedural due process rights ....................4

            iii. Plaintiff has not alleged a violation of his substantive due process rights .................8

    B. Plaintiff's First Amended Complaint fails to state a reasonable accommodation claim ......9

IV. Conclusion ...................................................................................................................13

Certificate of Service ........................................................................................................14

TABLE OF AUTHORITIES

Cases                                                                                          Pages

*Affiliated Prof'l Home Health Care Agency v. Shalala,*
   164 F.3d 282 (5th Cir. 1999) ..................................................................... 3
*Aguilar v. Tex. Dep't of Criminal Justice,*
   160 F.3d 1052 (5th Cir. 1998) ................................................................... 3
*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009).................................................................................. 2
*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007).................................................................................. 2
*Berry v. Texas Woman's Univ.,*
   528 F. Supp. 3d 579 (E.D. Tex. 2021)....................................................... 4
*Board of Curator of Univ. of Missouri v. Horowitz,*
   435 U.S. 78 (1978).................................................................................... 5
*Brennan v. Stewart,*
   834 F.2d 1248 (5th Cr. 1988).................................................................... 8
*Connick v. Thompson,*
   563 U.S. 51 (2011).................................................................................... 4
*Cozzo v. Tangipahoa Par. Council-President Gov't,*
   279 F.3d 273 (5th Cir. 2002) .................................................................... 4
*Davis v. Mann,*
   882 F.2d 967 (5th Cir. 1989) .................................................................... 6
*DePree v. Saunders,*
   588 F.3d 282 (5th Cir. 2009) .................................................................... 4
*Dewitt v. Sw. Bell Tel. Co.,*
   845 F.3d 1299 (10th Cir. 2017) ................................................................ 9
*Ekmark v. Matthews,*
   524 Fed. App'x 62 (5th Cir. 2013) ........................................................... 5
*Flynn v. Distinctive Home Care, Inc.,*
   812 F.3d 422 (5th Cir. 2016) .................................................................... 9
*Green v. Medco Health Sols. of Texas, L.L.C.,*
   560 F. App'x 398 (5th Cir. 2014)........................................................... 10
*Green v. Medco Health Sols. of Texas, LLC,*
   947 F. Supp. 2d 712, 729 (N.D. Tex. 2013) ...................................... 9, 10
*Hill v. Kan. City Area Transp. Auth.,*
   181 F.3d 891 (8th Cir. 1999) .................................................................. 10
*Hooks v. Landmark Indus., Inc.,*
   797 F.3d 309 (5th Cir. 2015) .................................................................... 2
*Howery v. Allstate Ins. Co.,*
   243 F.3d 912 (5th Cir. 2001) .................................................................... 2
*James v. Tex. Collin Cnty.,*
   535 F.3d 365 (5th Cir. 2008) .................................................................... 3

ii

*Jones v. Nationwide Life Ins. Co.*,
   696 F.3d 78 (1st Cir. 2012) ................................................................................. 10

*Ky. Dep't of Corr. v. Thompson*,
   490 U.S. 454 (1989) ............................................................................................. 5

*Levitt v. Univ. of Tex. at El Paso*,
   759 F.2d 1224 (5th Cir. 1985) ............................................................................. 7

*Lottinger v. Shell Oil Co.*,
   143 F.Supp.2d 743 (S.D. Tex. 2001) ................................................................... 9

*Meza v. Livingston*,
   607 F.3d 392 (5th Cir. 2010) ............................................................................... 5

*Miles-Hickman v. David Powers Homes, Inc.*,
   589 F. Supp. 2d 849 (S.D. Tex. 2008) ............................................................... 11

*Monell v. Dept. of Soc. Serv. of City of NY*,
   436 U.S. 658 (1978) ............................................................................................. 4

*Moore v. Willis Indep. Sch. Dist.*,
   233 F.3d 871 (5th Cir. 2000) ............................................................................... 3

*Paterson v. Weinberger*,
   644 F.2d 521 (5th Cir. 1981) ............................................................................... 2

*Price v. Elder*,
   175 F. Supp. 3d 676 (N.D. Miss. 2016) ............................................................. 4

*Price v. Shorty*,
   632 F. App'x 211 (5th Cir. 2016) (per curiam) ................................................. 4

*Quern v. Jordan*,
   440 U.S. 332 (1979) ............................................................................................. 4

*Raj v. La. State Univ.*,
   714 F.3d 322 (5th Cir. 2013) ............................................................................... 4

*Ramming v. United States*,
   281 F.3d 158 (5th Cir. 2001) ............................................................................... 2

*Regents of Univ. of Mich. v. Ewing*,
   474 U.S. 214 (1985) ............................................................................................. 8

*Rosas v. Univ. of Tex. at San Antonio*,
   793 F. App'x 267 (5th Cir. 2019) ........................................................................ 3

*Rose v. Laskey*,
   110 Fed. Appx. 136 (1st Cir.2004) .................................................................... 10

*Seaman v. CSPH, Inc.*,
   179 F.3d 297 (5th Cir. 1999) ............................................................................. 11

*Shaboon v. Duncan*,
   252 F.3d 722 (5th Cir. 2001) ............................................................................... 5

*Simi Inv. Co., Inc. v. Harris Cnty. Tex.*,
   236 F.3d 240 (5th Cir. 2000) ............................................................................... 8

*Stauffer v. Gearhart*,
   741 F.3d 574 (5th Cir. 2014) ............................................................................... 4

*Stollings v. Texas Tech Univ.*,
   No. 5:20-CV-250-H, 2021 WL 3748964 (N.D. Tex. Aug. 25, 2021) .................. 4

*Taylor v. Principal Fin. Grp., Inc.*,
   93 F.3d 155 (5th Cir. 1996) ............................................................................... 11

*Trahan v. Wayfair Maine, LLC,*
   957 F.3d 54 (1st Cir. 2020)....................................................................................9
*United States v. Tex. Tech. Univ.,*
   171 F.3d 279  n.14 (5th Cir. 1999) .....................................................................3
*Welch v. Tex. Tech. Univ. Health Serv. Ctr.,*
   No. 2012 WL 5986424 (N.D. Tex. Nov. 7, 2012) ................................................4
*Wheeler v. Miller,*
   168 F.3d 241 (5th Cir. 1999) ...............................................................................8
*Will v. Mich. Dep't of State Police,*
   491 U.S. 58 (1989)...............................................................................................4
*Wren v. Midwestern State Univ.,*
   No. 7:18-cv-00060-O-BP, 2019 WL 3099408 (N.D. Tex. June 25, 2019) ..............7

Statutes

42 U.S.C. § 1983.............................................................................................1,3,4
Tex. Educ. Code § 110.01.....................................................................................3

Rules

Federal Rule of Civil Procedure 12(b)(1) ...........................................................1, 2
Federal Rule of Civil Procedure 12(b)(6) .........................................................1, 2,4
Federal Rule of Civil Procedure 8(a) .................................................................2

iv

TO THE HONORABLE JAMES WESLEY HENDRIX:

Defendant Texas Tech University Health Sciences Center ("Defendant" or "TTUHSC"), by and through their undersigned attorney, file this Partial Motion to Dismiss Plaintiff's First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), and in support thereof, respectfully show the Court as follows:

## I.     BACKGROUND

This case centers around the dismissal of Plaintiff Schyler Z. Grodman, M.D., ("Plaintiff" or "Grodman") from TTUHSC's Pediatrics Residency Program.  (ECF No. 21, ¶ 19). Plaintiff alleges that he was employed by TTUHSC as a Resident in 2019 and was terminated from employment in January 2022. *Id*. He alleges that he is disabled due to attention deficit hyperactivity disorder, Autism Spectrum Disorder, depression, and social anxiety. *Id*. at ¶ 14. He alleges that TTUHSC discriminated against him on the basis of his disability, failed to accommodate his disability, and retaliated against him for requesting disability accommodations. He also alleges a procedural due process claim against TTUHSC and Dr. Samer Zaid-Kaylani, who was formerly employed by TTUHSC. Based on these allegations, Plaintiff asserts causes of action under: (1) the Rehabilitation Act; and (2) the Fourteenth Amendment pursuant to 42 U.S.C. § 1983.

Because TTUHSC is a Texas state institution protected by the state's sovereign immunity, well-established law shows that 1983 claims against state institutions are barred by the Eleventh Amendment, and Plaintiff's allegations fail to state a due process claim, TTUSHSC respectfully requests the Court grant this Partial Motion to Dismiss and dismiss the 1983 claim for lack of subject-matter jurisdiction and failure to state a claim. Further, because Plaintiff's First Amended Complaint does not plead facts showing TTUHSC refused to grant Grodman's reasonable accommodation requests, TTUHSC respectfully requests the Court dismiss Grodman's disability discrimination and reasonable accommodation claims.

1

## II.   ISSUES IN DISPUTE AND STANDARD OF REVIEW

**Issue 1:** Whether Plaintiff's procedural due process claim under Section 1983 against TTUHSC should be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1).

**Issue 2:** Whether Plaintiff's Section 1983 claim should be dismissed under Rule 12(b)(6).

**Issue 3:** Whether Plaintiff's reasonable accommodation claim under the Rehabilitation Act should be dismissed under Rule 12(b)(6).

**12(b)(1) Standard:** When the court lacks statutory or constitutional power to adjudicate a case, the case is properly dismissed for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1); *Hooks v. Landmark Indus., Inc.*, 797 F.3d 309, 312 (5th Cir. 2015). Generally, "[t]he burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citation omitted). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001); *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam). A defendant may challenge a court's subject matter jurisdiction through a "facial attack" or a "factual attack." *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). Where, as here, a defendant challenges subject matter jurisdiction on the face of a complaint, the district court presumes the plaintiff's factual allegations to be true and determines whether those allegations are legally sufficient to establish jurisdiction. *See id.*

**12(b)(6) Standard:** A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Therefore, a complaint must allege sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

2

### III.    ARGUMENT

**A. Plaintiff's First Amended Complaint fails to state a due process claim.**

   **1.    TTUHSC has sovereign immunity from claims brought under Section 1983.**

Eleventh Amendment immunity is a jurisdictional bar. *U.S. v. Tex. Tech. Univ.*, 171 F.3d 279, 285 (5th Cir. 1999) (citing U.S. Const. amend. XI). "The Eleventh Amendment bars claims against a state brought pursuant to [Section] 1983." *Aguilar v. Tex. Dep't of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998); *see also Rosas v. Univ. of Tex. at San Antonio*, 793 F. App'x 267, 272 (5th Cir. 2019) ("Congress did not abrogate state sovereign immunity for Title VIII or §§ 1983, 1985, or 1986 claims.") (citing *Affiliated Prof'l Home Health Care Agency v. Shalala*, 164 F.3d 282, 286 (5th Cir. 1999) (per curiam)). Furthermore, the "Eleventh Amendment cloaks Texas Tech University and TTUHSC with sovereign immunity as state institutions." *Tex. Tech. Univ.*, 171 F.3d at 289 n.14; Tex. Educ. Code § 110.01) (establishing TTUHSC as state institution under control of Texas Tech Board of Regents). Thus, TTUHSC has sovereign immunity from Plaintiff's Section 1983 claim, the Court lacks jurisdiction over it, and it should be dismissed under Rule 12(b)(1).

   **2.    Plaintiff's Section 1983 claim fails to state a claim upon which relief can be granted.**

"To state a section 1983 claim, 'a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.'" *James v. Tex. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008) (quoting *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000)). Plaintiff's First Amended Complaint does not state a Section 1983 claim.

### i.  Section 1983 does not permit claims against state institutions.

The State of Texas (including its agencies and institutions) are not subject to suit under § 1983—neither for monetary damages, nor for declaratory or injunctive relief.[1] The express language of § 1983 permits suits against a "person."[2]  *See* 42 U.S.C. § 1983. It is well-established that a state is not a "person" subject to suit under § 1983. *See, e.g.*, *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Stauffer v. Gearhart*, 741 F.3d 574, 583 (5th Cir. 2014) (per curiam). Thus, Plaintiff's Section 1983 claim against TTUHSC should be dismissed under both Rule 12(b)(1) and 12(b)(6) because TTUHSC is not a 'person' within the meaning of Section 1983." *Welch v. Tex. Tech. Univ. Health Serv. Ctr.*, No. 2012 WL 5986424 at *4 (N.D. Tex. Nov. 7, 2012) (citing *Will*, 491 U.S. at 65-66); *Stollings v. Texas Tech Univ.*, No. 5:20-CV-250-H, 2021 WL 3748964, at *8–*9 (N.D. Tex. Aug. 25, 2021).

### ii.  Plaintiff has not alleged a violation of his procedural due process rights.

Even if TTUHSC could constitute a person for purposes of Section 1983, Plaintiff's First Amended Complaint fails to allege a violation of either his procedural due process or his substantive due process. The threshold requirement for any due process claim is the government's deprivation of a liberty or property interest. *DePree v. Saunders*, 588 F.3d 282, 289 (5th Cir. 2009).  The Supreme Court employs a two-step analysis to determine whether an individual's procedural due process rights have been violated. *Meza v. Livingston*, 607 F.3d 392, 399 (5th Cir. 2010). The Court first examines "whether there exists a liberty or property interest which has been interfered with by the

---

[1] Accordingly, Section 1983 also does not abrogate the State's sovereign immunity. *Quern v. Jordan*, 440 U.S. 332, 340–45 (1979); *Price v. Shorty*, 632 F. App'x 211, 212 (5th Cir. 2016) (per curiam). Neither suits for money damages nor for declaratory or injunctive relief may be brought against a state agency absent a valid waiver or Congressional abrogation of sovereign immunity. *See Cozzo v. Tangipahoa Par. Council-President Gov't*, 279 F.3d 273, 280–81 (5th Cir. 2002); *Raj v. La. State Univ.*, 714 F.3d 322, 328 (5th Cir. 2013).

[2] Further, a government entity "cannot be held liable under § 1983 on a *respondeat superior* theory." *Price v. Elder*, 175 F. Supp. 3d 676, 679 (N.D. Miss. 2016) (citing *Monell v. Dept. of Soc. Serv. of City of NY*, 436 U.S. 658, 698 (1978)); *Berry v. Texas Woman's Univ.*, 528 F. Supp. 3d 579, 601 (E.D. Tex. 2021) (citing *Connick v. Thompson*, 563 U.S. 51, 60 (2011)) (noting it is well-settled that *respondeat superi*or and other theories of vicarious liability are inapplicable in Section 1983).

4

State;" then it "examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).

Plaintiff alleges that he has a "constitutionally protected property [interest] in his position at TTUHSC as a Third-Year Resident in the Pediatrics Program" and that as a member of the residency program he "had a constitutionally protected valid entitlement to continued employment at the University." (ECF No. 21 ¶¶ 81, 83). The Fifth Circuit has declined to confirm whether such entitlement to (property interest in) a medical residency certification exists. *Ekmark v. Matthews*, 524 Fed. App'x 62, 63 (5th Cir. 2013) (only assuming that appellant had property interest in residency for the sake of the argument); *see also Board of Curator of Univ. of Missouri v. Horowitz*, 435 U.S. 78, 85 (1978) (only assuming the existence of some interest while holding that she received all that the Fourteenth Amendment would require). Rather, the Fifth Circuit has instead focused on the process the medical resident received. Without deciding whether a medical resident has a liberty or property interest in their residency, the Fifth Circuit has consistently held that even if that interest were to exist, the due process deserved is more akin to the due process a student receives rather than employee. *Ekmark*, 524 Fed. App'x at 63 ("In the context of due process, medical residents are students rather than employees of the hospital.") (citing *Shaboon v. Duncan*, 252 F.3d 722, 729 (5th Cir. 2001)).

Furthermore, the Fifth Circuit has drawn another distinction "between the process required for students facing discipline and academic actions that require 'far less stringent procedural requirements.'" *Ekmark*, 524 Fed. App'x at 64 (quoting *Horowitz*, 435 U.S. at 86). In doing so, the Fifth Circuit has emphasized that "physicians and administrators directing residency programs are in the best position to determine which candidates are suited to progress through the program and have satisfactorily completed the requirements for certification." *Id.* (citing *Davis*, 882 F.2d at 974). Thus,

5

"[a]dverse academic actions against medical residents require only the minimum procedure of notice and not a hearing." *Id.* (citing *Horowitz*, 435 U.S. at 90; and *Shaboon*, 252 F.3d at 731). "It is well-known that the primary purpose of a residency program is not employment or a stipend, but the academic training and the academic certification for successful completion of the program." *Davis v. Mann*, 882 F.2d 967, 974 (5th Cir. 1989).

Here, Plaintiff was given a probation letter on December 17, 2021, suspended on December 23, 2021, and recommended for dismissal on January 7, 2022; his recommendation for dismissal was reviewed by an Appeal Review Subcommittee at an appeal hearing in February 2022 that Plaintiff requested before any final determination was made by TTUHSC. (ECF No. 21 ¶ 19, 55; Ex. J, K, M).  Plaintiff was informed that his probation was due to concerns given his medical knowledge, patient care, and professionalism. (ECF No. 21, Ex. J). When Plaintiff was suspended, he was informed that it was for having violated the terms of his probation and that Plaintiff's performance constituted a danger to patients. (ECF No. 21, Ex. K). When he was recommended for dismissal, Plaintiff was informed that it was due to performance that presents a serious compromise to acceptable standards of patient care, unprofessional conduct towards his patients and colleagues, failure to progress to the expected level of competency as a third-year pediatric resident, and failure to follow the probation objectives outlined in his probation letter that jeopardized patient welfare. (ECF No. 21, Ex. M). He appealed the decision and was afforded a hearing. (ECF No. 21, ¶ 55).

Plaintiff's First Amended Complaint clearly demonstrates that Plaintiff was dismissed for academic reasons because his dismissal "rested on the academic judgment of school officials that [he] did not have the necessary clinical ability to perform adequately as a medical doctor and was making insufficient progress toward that goal." *Horowitz*, 435 U.S. at 89-90. Thus, Plaintiff was not even entitled to a formal hearing. *Ekmark* 524 Fed. App'x at 64; *see also Shaboon* 252 F.3d at 731 (Appellant not entitled to any type of hearing as a matter of law when dismissed on academic

6

grounds); *Horowitz*, 435 U.S. at 90. But nevertheless, Plaintiff still received a hearing and simply disagrees with the outcome. Accordingly, Plaintiff was given sufficient due process before his dismissal.[3]

The due process owed to Plaintiff was that the University "fully [inform him] of the faculty's dissatisfaction with [his] clinical progress and the danger that this posed to timely graduation and continued enrollment." *Wren v. Midwestern State Univ.*, No. 7:18-cv-00060-O-BP, 2019 WL 3099408 at *13 (N.D. Tex. June 25, 2019) (quoting *Horowitz*, 435 U.S. at 85 (internal quotations removed)). Plaintiff was given such notice and opportunity to respond. He was informed of the dissatisfaction the faculty had with his clinical progress as evidenced by the fact that he was placed on probation and the probation letter not only informed him why he was on probation but that "occurrence on [his] part of any unsafe practice or unprofessional incidents may result in the recommendation that [he] be dismissed immediately from [the] program." (ECF No. 21, Ex. J). He not only had the opportunity to respond to the advance notice before termination, he in fact did so by sending a letter to the Committee that decided to affirm the recommendation for his dismissal. (ECF No. 21, ¶ 48). Further, he was given a hearing to respond to this recommendation before it was finalized. (ECF No. 21, ¶ 55). For these reasons, *assuming arguendo* Plaintiff had a property interest in completing his residency, because he was informed of the University's dissatisfaction with him and the danger that that posed to his timely graduation, provided multiple and ample opportunities to respond and was given a hearing, Plaintiff received all the process he was due. Thus, his First Amended Complaint does not state a procedural due process claim.

---

[3] Plaintiff's claim may not be based on a violation of University policies, rules, or procedures. The University's "rules do not establish the constitutional floor of due process." *Eckmark*, 524 Fed. App'x at 64 (citing *Levitt v. Univ. of Tex. at El Paso*, 759 F.2d 1224, 1230 (5th Cir. 1985)). When the procedures actually given comport with due process, even if a university does not follow its own rules, one cannot state a procedural or substantive due process claim. *See Levitt*, 759

### iii.  Plaintiff has not alleged a violation of his substantive due process rights.

"Substantive due process analysis is appropriate only in cases in which government arbitrarily abuses its power to deprive individuals of constitutionally protected rights[.]" *Simi Inv. Co., Inc. v. Harris Cnty. Tex.*, 236 F.3d 240, 249 (5th Cir. 2000); *Brennan v. Stewart*, 834 F.2d 1248, 1257 (5th Cr. 1988) (internal quotation marks and citations omitted). The Supreme Court has held that "decisions in the academic setting are subject to 'a narrow avenue for judicial review' under a substantive due process standard." *Wheeler v. Miller*, 168 F.3d 241, 249 (5th Cir. 1999) (quoting *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 227 (1985)). When reviewing these decisions, the court "may not override [the decision] unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment." *Ewing*, 474 U.S. at 225. This is because "[w]hen judges are asked to review the substance of a genuinely academic decision, … they should show great respect for the faculty's professional judgment." *Id*.

As previously stated, the Fifth Circuit has declined to state that a person has a property or liberty interest in their medical residency. *Assuming arguendo* that Plaintiff had such an interest, the complaint fails to demonstrate that the decision to terminate him was "beyond the pale reasoned academic decision-making when viewed against the background of [his] entire [residency]." *Wheeler*, 168 F.3d at 250. Plaintiff's First Amended Complaint demonstrates that the decision to place him on probation was based on low-test scores, multiple examples of serious patient related incidences, and poor professionalism. (ECF No. 21, Ex. G–K, M). These are all valid academic decisions for placing Plaintiff on probation and eventually terminating him from a medical residency

---

F.2d at 1229 (rejecting assertion that failure to follow university disciplinary procedure rules violated due process).

8

program, where the safety and care of patients' lives are at risk.[4] There is no indication whatsoever

that his dismissal was beyond the pale, shocking, or even surprising, given the stated reasons for the

dismissal—which Plaintiff fails to specifically refute. *See, e.g.,* (ECF No. 21 at § VI). As such,

Plaintiff's First Amended Complaint does not state a substantive due process claim against

TTUHSC.

### B. Plaintiff's First Amended Complaint fails to state a reasonable accommodation claim.

A reasonable accommodation is a change in workplace conditions that would enable an

employee to perform the essential functions of the job. *Trahan v. Wayfair Maine, LLC*, 957 F.3d 54,

65 (1st Cir. 2020). However, "[a] requested accommodation that simply excuses past misconduct is

unreasonable as a matter of law." *Id.* After all, federal disability law does not oblige an employer to

accommodate an employee's disability retroactively.[5] *Id.*; *Lottinger v. Shell Oil Co.*, 143 F.Supp.2d

743, 758, 768 (S.D. Tex. 2001). ("Thus, the ADA [and accordingly, the Rehabilitation Act] does not

insulate an employee from adverse action taken by an employer because of misconduct in the

workplace, even if his improper behavior is arguably attributable to an impairment."). "The Equal

Employment Opportunity Commission's ("EEOC") Enforcement Guidance makes clear that the

requirement to provide reasonable accommodations under the [act] is 'always prospective,' and that

'an employer is not required to excuse past misconduct even if it is the result of the individual's

disability.'" *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1316 (10th Cir. 2017). There exists no

obligation to initiate the interactive process to identify a reasonable accommodation during the

interim between misconduct and eventual termination. *See Green v. Medco Health Sols. of Texas,*

*LLC*, 947 F. Supp. 2d 712, 729 (N.D. Tex. 2013), *aff'd sub nom. Green v. Medco Health Sols. of*

---

[4] As in *Shaboon*, only the process required for academic—not disciplinary—decisions was warranted, because he was not terminated *solely* for disciplinary reasons. 252 F.3d at 731.

[5] Section 504 of the Rehabilitation Act incorporates portions of the ADA by reference. *Flynn v. Distinctive Home Care, Inc.*, 812 F.3d 422, 426 (5th Cir. 2016).

*Texas, LLC*, 560 F. App'x 398 (5th Cir. 2014).

In other words, "[w]hen an employee requests an accommodation for the first time only after it becomes clear that an adverse employment action is imminent, such a request can be 'too little, too late.'" *Jones v. Nationwide Life Ins. Co.*, 696 F.3d 78, 90 (1st Cir. 2012). "Such a request is better understood as a plea either for forgiveness or for a second chance." *Trahan* 957 F.3d at 65; *see also Rose v. Laskey*, 110 Fed. Appx. 136, 138 (1st Cir. 2004) (per curiam) (finding that plaintiff's presentation of therapist's letter requesting leave of absence after plaintiff threatened supervisor with violence was "untimely" as well as unreasonable); *Hill v. Kan. City Area Transp. Auth.*, 181 F.3d 891, 894 (8th Cir. 1999) (finding accommodation request untimely when employee made request only after committing two rule violations that "she knew would mandate her discharge").

Here, Plaintiff knew an adverse employment action was imminent when he was placed on suspension, on December 23, 2021. (ECF No. 14-1, K). According to the First Amended Complaint, this is the "first time" Plaintiff requested the accommodation that he be allowed to take leave to adjust his medication. (ECF No. 21, ¶ 35, Ex. L). Plaintiff was notified that he had violated the terms of his Probation Objectives and that concerns existed that the performance of his duties were seriously compromised or may constitute a danger to patients. *Id*. He was notified that the program had 30 days to conclude an investigation and determine the next course of action. *Id*. After that notice, in January 2022, Plaintiff proposed to rectify his employment by requesting disability accommodations. (ECF No. 21, Ex. L, N). Thus, Plaintiff's request followed workplace misconduct—when termination was looming. The request should not be viewed as an accommodation proposal at all; instead, it was a request for forgiveness or a second chance. *Trahan* 957 F.3d at 65.

Further, Grodman alleges he previously made "informal" requests for accommodation. (ECF No. 21, ¶¶ 75–77). But these allegations do not satisfy the plausible pleading standard. An employee

10

seeking accommodation for a mental disorder, where the limitations and necessary accommodations are not open and obvious, has the burden to specifically identify not only a disability, but *also* disclose the resulting limitations *and* suggest reasonable accommodations. *Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 165–66 (5th Cir. 1996). Moreover, this obligation is ongoing. An employer cannot be held responsible if accommodations provided are ineffective and the employee does not alert the employer until it is too late—and he has committed workplace misconduct—even if the misconduct was due to the disability. *See Seaman v. CSPH, Inc.*, 179 F.3d 297, 301 (5th Cir. 1999) (finding no liability when employer made efforts to accommodate employee but specific limitations of disability where unknown and employee had not previously requested specific accommodation that had been denied); *Miles-Hickman v. David Powers Homes, Inc.*, 589 F. Supp. 2d 849, 867, n. 38 (S.D. Tex. 2008) ("In general, it is the responsibility of the individual with the disability to inform the employer that an accommodation is needed."). [A]n employee cannot remain silent and expect his employer to bear the burden of identifying the need for and suggesting appropriate accommodation." *Seaman*, 179 F.3d at 301.

Accordingly, if an employee requests discrete accommodations for a non-open and obvious impairment in isolated instances but does not continue requesting them or disclose to his employer that he needs accommodations he had previously received in past situations—or alternatively does not disclose that a reasonable accommodation is not effective—until termination is looming and after terminable workplace misconduct, as in this case, the employee has not met his initial burden. (ECF No. 21, ¶ 24). Thus, assuming *arguendo* TTUHSC had any obligation to provide reasonable accommodations at all, taking Plaintiff's factual allegations as true and indulging every reasonable inference in his favor, he has still not plausibly pled that TTUHSC refused to provide him reasonable

accommodations.[6] He has simply alleged that TTUHSC did not forgive his misconduct.

As discussed, Plaintiff's First Amended Complaint shows that Plaintiff did not make a formal request for an accommodation (to adjust his medication) until termination was looming, when he had been placed on suspension. (ECF No. 21, ¶¶ 35, 43, Ex. K, L). In addition, the First Amended Complaint further shows that Plaintiff did not disclose "the extent of his psychiatric problems" until he made this request. (ECF No. 21, ¶ 48); *see also* (ECF No. 21, ¶ 16) (further showing how Plaintiff's condition was not open and obvious by alleging it only limited a major life activity when active). Thus, even if Plaintiff had received accommodations in the past, he still had the obligation to inform his employer that he needed them again, prospectively, by submitting a request identifying his disability, specifying what accommodations he desired, and identifying the specific mental limitations justifying the need for such accommodations—*before* termination was looming. But Plaintiff seemingly concedes he requested accommodations not prospectively, but to avoid termination for past misconduct and performance. *See* (ECF No. 21 at ¶¶ 43, 45).

TTUHSC was under no obligation under the Rehabilitation Act to ignore his prior misconduct and performance. Plaintiff had been given numerous opportunities to correct his deficiencies within the residency program, but to no avail. As in *Jones*, Plaintiff's request was "too little, too late." Whether his behavior was a result of his disability is irrelevant for the purposes of this analysis. As a matter of law, the Court should dismiss Plaintiff's reasonable accommodation claim. In the alternative, if the Court disagrees and finds Plaintiff's allegations of informal requests satisfy the pleading standard, the Court should *partially* dismiss the claim, holding that Plaintiff cannot hold TTUHSC liable under a reasonable accommodation theory for not granting his request

---

[6] Plaintiff's frames the progressive increase in responsibility and independent medical practice expected of medical residents as a withdrawal of accommodations, but even accepting the allegation as fact—that Defendant deliberately stopped providing accommodations in situations where it had previously provided them—Plaintiff's obligation to speak up before it was "too little too late" would remain unchanged.

for leave to adjust his medication. Under the facts as pleaded, this request was untimely and cannot be viewed as an accommodation request at all.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff's Section 1983 claim is barred by sovereign immunity and the Eleventh Amendment.  Even if it were not barred, Plaintiff has failed to state a procedural due process claim—not only because TTUHSC is not a "person" who may be sued under Section 1983, but also because Plaintiff's First Amended Complaint demonstrates that he received all the process he was due under the Fourteenth Amendment. Finally, because Plaintiff has failed to allege facts showing that he requested and was denied reasonable accommodations for a non-open and obvious impairment, he has failed to state a reasonable accommodation claim. In the alternative, at least the portion of the claim alleging that TTUHSC did not allow Plaintiff to take leave to adjust his medication should be dismissed.

Defendant TTUHSC, therefore, respectfully requests that this Court grant this motion and for such other relief as it may show itself justly entitled.

Respectfully submitted.

KEN PAXTON
Attorney General

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

JAMES LLOYD
Deputy Attorney General for Civil Litigation

KIMBERLY GDULA
Chief, General Litigation Division

13

/s/ Joseph Keeney
**Joseph Keeney**
State Bar No. 24092616
Assistant Attorney General
Office of the Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Telephone: (512) 475-4090
Facsimile: (512) 320-0667
Joseph.Keeney@oag.texas.gov

**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of *Defendants' Partial Motion to Dismiss* was filed via the *CM/ECF system* on January 31, 2024, to:

Jeffrey M. Tillotson
Enrique Ramirez-Martinez
**TILLOTSON JOHNSON & PATTON**
1201 Main Street, Suite 1300
Dallas, Texas 75202
(214) 382-3041 Telephone
(214) 292-6564 Facsimile
jtillotson@tillotsonlaw.com
Eramirez@tillotsonlaw.com

/s/ Joseph Keeney
**JOSEPH KEENEY**
Assistant Attorney General

14